UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| OSMAN ALEXANDER CASTRO,<br>    Plaintiff<br>  v.<br><br>CHAD WOLF, Acting Secretary, U.S. Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. CITIZENSHIP AND IMMIGRATION SERVICES, and MICHAEL J. McCLEARY, Field Office Director, USCIS Boston Field Office.<br>    Defendants. | C.A. No. |

**PLANTIFFS' ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF AND REVIEW OF AGENCY ACTION UNDER THE <u>ADMINISTRATIVE PROCEDURE ACT</u>**

This action is brought by the Plaintiff, **Osman Alexander Castro,** against the Defendants to seek review of a January 21, 2020 decision of the U.S. Citizenship and Immigration Services improperly closing the Plaintiff's application to adjust status. The Plaintiff seeks a declaratory judgment declaring: the decision of the Defendants dated January 21, 2020 to administratively close the Plaintiff's application to adjust status unlawful; reversing the January 21, 2020 decision to close the Plaintiff's application; ordering the Defendants to reopen the Plaintiff's application to adjust status and accept jurisdiction over the application; ordering the Defendants to adjudicate and approve the Plaintiff's application to adjust status immediately; and granting the Plaintiff lawful permanent residence and striking the Defendants January 21, 2020 decision as unlawful and in violation of the Immigration and Nationality Act and associated regulations and the Administrative Procedure Act. The Plaintiff also seeks injunctive relief against the Defendants to prevent them from taking further action on the Plaintiff's case other than issuing the corrected decision requested herein. The Plaintiff seeks action on this petition on an emergency basis due to circumstances set forth in this complaint.

## PARTIES

1. The Plaintiff, **Osman Alexander Castro**, is a native and citizen of Honduras. The Plaintiff resides in Chelsea, Massachusetts with his United States citizen wife. Mr. Castro also has two United States citizen children: Joshua Alexander Castro, 25 years-old and Ashley Judith Castro, 19 years-old. Both children were born in the United States.

2. The Defendant, **Chad Wolf**, is being sued in his official capacity as the Acting Secretary of the Department of Homeland Security. In this capacity, he is charged with the administration and enforcement of the immigration laws, pursuant to 8 U.S.C., §1103, and he possesses extensive discretionary powers to grant certain relief to non-U.S. Citizens. More specifically, the Secretary of the Department of Homeland Security is responsible for the adjudication of visa petitions, applications to adjust status, and various other immigration applications pursuant to §§ 204, 245, et. seq. of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1154, 8 U.S.C. §1255, et. seq. The U.S. Citizenship and Immigration Services is an agency within the Department of Homeland Security to whom the Secretary's authority has in part been delegated, and is subject to the Secretary's supervision.

3. The Defendants, **Department of Homeland Security (hereinafter "DHS") and the U.S. Citizenship and Immigration Services (hereinafter "USCIS")** are the agencies responsible for enforcing the INA and for adjudicating and properly acting on the Plaintiff's application to adjust status.

4. The Defendant, **U.S. Citizenship and Immigration Servic**es**,** includes the **Boston Field Office.** The Defendant, **Michael McCleary**, is the Director of the Boston Field Office which is the place where the Plaintiff was interviewed in connection with his application to adjust status

and is the office that erroneously closed the Plaintiff's application. The Boston Field Office is located at the JFK Federal Building, 15 New Sudbury Street, Boston, MA 02203.

## JURISDICTION

5. Jurisdiction in this case is proper under the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*; 28 U.S.C. §§ 1331 and 1361; the Administrative Procedures Act (APA), 5 U.S.C. § 701 *et seq.*; and 28 U.S.C. § 2201 *et seq.* Relief is requested pursuant to said statutes. There is an actual and justiciable controversy between the parties and the Plaintiff seeks declaratory and injunctive relief in this action.

## VENUE

6. Venue is proper in this court pursuant to 28 U.S.C. § 1391(e), in that this is an action against officers and agencies of the United States in their official capacities, brought in the District where the Defendants conduct business and where a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred. More specifically, the Plaintiff resides in Massachusetts, the Plaintiff was interviewed at the USCIS Boston Field Office, and the Plaintiff's application to adjust status that is in dispute was improperly closed by the USCIS Boston Field Office which has jurisdiction over applications to adjust status filed by Massachusetts residents who live in the Boston, MA area.

## EXHAUSTION OF REMEDIES

7. The March 26, 2020 decision by the Defendant USCIS to administratively close the Plaintiff's application to adjust status constitutes a final agency action under the APA, 5 U.S.C. § 701 *et seq*. Neither the INA nor DHS regulations at 8 C.F.R. § 103.3(a) require an administrative appeal of the denial. Accordingly, the Plaintiff has no administrative remedies to exhaust.

Moreover, exhaustion of any available administrative remedies will be meaningless and ineffective given the issues in this case and this lawsuit is the Plaintiff's only legal means to rectify the situation. The Plaintiff has no other viable remedy or legal avenue to pursue in connection with this issue other than this action.

## FACTUAL AND LEGAL ALLEGATIONS

### The Plaintiff's Immigration History.

8. The Plaintiff first entered the United States sometime in 1991 or 1992 without inspection. At the time of his initial entry, he did not possess any valid documents. On September 15, 1993, Mr. Castro was ordered deported to Honduras after coming in contact with what was then Immigration and Naturalization Service ("INS") officers. He was later physically sent to Honduras thus executing the order of deportation. This is an important point because once the order of deportation has been executed and his deportation has been effectuated, he is no longer in deportation proceedings and, it would follow, the deportation proceedings cannot be reopened.

9. After spending some time in Honduras, Mr. Castro returned to the United States sometime in November of 1996. On January 5, 1999 President Clinton designated Honduras as a recipient of Temporary Protected States ("TPS") as a result of the devastation brought on to that country by hurricane Mitch. Mr. Castro quickly registered for TPS and has remained on TPS ever since. In addition to obtaining TPS, the Plaintiff was granted employment authorization which permitted him to live and work in the United States legally. From 1999 until present, the TPS program for citizens of Honduras was renewed and the Plaintiff renewed his TPS and his employment authorization as required by the program. He is currently in valid TPS status through January 4, 2021 due to pending litigation against the Trump administration which tried to terminate such program.

10. Effective September 9, 2019, the Trump Administration, purposely and with the intent to

harm and deport citizens of Honduras from the United States, terminated TPS for citizens of that country. By virtue of a preliminary injunction in the case, *Ramos, et al. v. Nielson, et al.*, No. 18-cv-01554 (N.D. Cal. October 3, 2018), the Trump administration was prevented from enforcing its termination of TPS for citizens of Honduras and several other countries. Solely as a result of the injunction in *Ramos*, TPS for citizens of Honduras has been extended through January 4, 2021. However, the future of TPS for citizens of El Salvador, and citizens of many other countries, remains entirely uncertain. In fact, given the Trump administration's propensity for curtailing immigration and terminating immigration related programs initiated under previous administrations, the Plaintiff anticipates that his TPS status will terminate thereby leaving him subject to removal proceedings where he is not eligible to apply for adjustment of status.

### The Plaintiff's personal history and application to adjust status.

11. The Plaintiff was born in 1976 in Honduras. The Plaintiff is married to a United States citizen born and raised in the United States. He also has two adult children from a previous relationship. Both children were born and raised in the United States.

12. As an individual with TPS the Plaintiff is eligible to apply for permission to depart and re enter the United States, through a process commonly called "advance parole." Upon approval of an application for advance parole, the applicant receives an advance parole document that permits him/her to travel outside the United States and re-enter the country legally. Upon entry to the United States after foreign travel, the TPS holder is "paroled" into the United States by virtue of the advance parole document issued by the USCIS. However, TPS holders cannot travel outside the United States and legally re-enter the country without an approved advance parole document. That is to say that even though a person may be in valid TPS status, that status in and of itself does not permit the individual to leave the United States and legally re-enter the country. It is only by virtue of the advance parole document that a person with TPS will be permitted to

legally re-enter the United States after foreign travel. Upon entry to this country with advance parole the TPS holder is issued Form I-94 by U.S. Customs and Border Protection (CBP) which is stamped "Paroled." The authority to parole non-citizens into the United States and the meaning of the term "parole" are defined by statute.

> "The Attorney General may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."

 INA § 212(d)(5)(A).

13. In July of 2017, the Plaintiff applied for and was granted advance parole so that he could travel outside the United States and legally re-enter the country.  Upon approval of his application for advance parole, the USCIS issued a document entitled, "I-512L, Authorization for Parole of an Alien Into the United States."  On December 17, 2017, after a brief trip outside the United States, the Plaintiff was paroled into the country when he returned from his trip. Upon his arrival to the United States in Dallas, TX a CBP Officer stamped the Plaintiff's Form I-512L and also issued him Form I-94 which paroled the Plaintiff into this country for a period of one year. (Copies of the Plaintiff's Form I-512L, pages from his Passport and his Form I-94 are attached hereto as Exhibit A). The Plaintiff has continued to reside in this country in valid TPS status subsequent to his last entry as a parolee in 2017.

14. In January 2018, the Plaintiff's U.S. Citizen wife filed a visa petition for him on Form I-130 and he concurrently filed Form I-485, Application to Adjust Status.  On September 13, 2018, the Plaintiff and his wife, together with their attorney, attended an interview at the Defendant USCIS Boston Field Office in connection with the visa petition and the application to

adjust status. At the time the Plaintiff filed his application to adjust status and for many years prior to then, the USCIS routinely approved cases similar to the Plaintiff's based on the fact that as a parolee he is an "arriving alien" and the USCIS has jurisdiction over applications to adjust status filed by "arriving aliens." However, rather than issue a decision on his case, the USCIS held onto the case and failed to adjudicate the Plaintiff's application. On several occasions subsequent to the interview, counsel for the Plaintiff made written inquiry to the Defendant, USCIS Boston Field Office, in an effort to obtain adjudication of the pending I-485. Despite considerable efforts by the Plaintiff to have his application adjudicated, the USCIS refused to respond to the inquiries and failed to adjudicate his application. Rather, the USCIS purposely, and with the intent to damage the Plaintiff, waited until July 2, 2019 to render an adverse decision on the Plaintiff's application.

15. By decision dated March 26, 2020, the USCIS notified the Plaintiff that it had administratively closed his application to adjust status based on the determination that it does not have jurisdiction to adjudicate the application, erroneously concluding that the Plaintiff is not an "arriving alien" despite the fact that he was paroled into the United States and alleging that they do not have jurisdiction because of the prior order of deportation. (A copy of the Notice of Administrative Closure is attached hereto as Exhibit B).  Moreover, the decision is a final decision on the Plaintiff's application and has the same effect as a denial of the application.  Based on the erroneous decision by the USCIS the Plaintiff is now unable to adjust his status.

**The Immigration and Nationality Act and Arriving Aliens.**

16. Pursuant to INA § 245(a) non-citizens who were "inspected and admitted or paroled" into the United States and for whom an immigrant visa is immediately available at the time an application to adjust status is filed may apply for residence in the United States. Applications to adjust status filed pursuant to INA § 245(a) are filed with and adjudicated by the USCIS. *8 CFR § 245.2(a)*.  When a non-citizen, who is not defined by law as an "arriving alien," is referred to

the Immigration Court for removal proceedings, jurisdiction over an application to adjust status vests with the Immigration Court. *8 CFR § 1245.2(a)(1)*. However, subject to one very specific and limited exception not applicable to this case, the USCIS has exclusive jurisdiction over applications to adjust status filed by "arriving aliens." *8 CFR § 1245.2(a)(2)*. The "arriving alien" regulation was created by the USCIS and the Executive Office for Immigration Review (EOIR) after the agencies decided numerous cases where parolees in removal proceedings were being prevented from adjusting their status based on a false interpretation of the INA by the government. *See Succar v. Ashcroft*, 394 F.3d 8 (1st Cir. 2005); *Zheng v. Gonzales*, 422 F.3d 98 (3rd Cir. 2005); *Bona v. Gonzales*, 425 F.3d 663 (9th Cir. 2005); *71 Fed. Reg. No. 92*, 27587 (May 12, 2006). In creating the current regulation, the agencies recognized that "arriving aliens" are entitled to seek adjustment of status under INA § 245(a) and that the USCIS would have exclusive jurisdiction over the initial application if properly filed by an eligible applicant. *See 71 Fed. Reg. No. 92*, pp. 27585-27592 (May 12, 2006.).

17. An "arriving alien" is defined as:

> An applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designed port-of-entry, and regardless of the means of transport. An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after such parole is terminated or revoked.

8 C.F.R. §§ 1.2 and 1001.1(q). Parolees by definition are "arriving aliens" because at a port-of-entry they are permitted to physically enter the United States, but they are not "admitted." "[S]uch parole of such alien shall not be regarded as an admission of the alien." *INA § 212(d)(5)(A)*. Moreover, BIA case law clearly states that parolees are "arriving aliens." *See In Re Oseiwusu*, 22 I&N Dec. 19, 19-20 (BIA 1998)("The respondent was paroled into the United States upon his arrival pursuant to a grant of advance parole…[G]iven the fact that the Respondent was paroled into the United States, he falls within the definition of an 'arriving

alien.'").

18. That the Plaintiff was paroled into the United States upon his last entry on December 17, 2017 is irrefutable. Nevertheless, in its decision to administratively close the Plaintiff's application to adjust status, the USCIS states, "On September 15, 1993 an Immigration Judge ordered you deported under A 072 017 344. See 8 CFR section 245.1 (c)(8)(ii). USCIS also determined that you are not an arriving alien under A 072 017 344 because on or around October 24, 1992 you entered the United States without inspection." It continues, "Since you are subject of a deportation order, and you are not an 'arriving alien' under A 072 017 344, only EOIR has jurisdiction to grant or deny your Form I-485 based on the merits. Because USCIS does not have jurisdiction, your Form I-485 is administratively closed; however, this does not prevent you from seeking adjustment before EOIR. 8 CFR 245.2 (a)(1) and 1245.2 (a)(1)." After completely misconstruing the law, the USCIS decision goes on to say, "You must move EOIR to reopen the proceedings in order for you to apply for adjustment of status. If the removal proceedings are terminated without adjudication by EOIR on your adjustment application, you may submit to this office a copy of the termination order and a written request for USCIS to reopen your Form I-485." *See Exhibit B.*

19. The USCIS decision that it lacks jurisdiction over the Plaintiff's application to adjust status is a complete fallacy and was made with complete disregard to the law and the basic facts of the Plaintiff's case. The USCIS's attempt to re-define the definition of an "arriving alien" completely disregards the plain language of the statute and ignores the basic facts of this case. Regardless of the fact that there was a deportation order from 1993, the Plaintiff is an "arriving alien" and the USCIS has jurisdiction over his application to adjust status. The decision of the USCIS to administratively close the Plaintiff's application to adjust status based on lack of jurisdiction is arbitrary, capricious and an abuse of discretion.

20. Additionally, the Plaintiff's order of deportation was executed when he was physically sent to Honduras. That was the end of the deportation case. There is nothing to reopen because the case

is no longer active and EOIR no longer has jurisdiction over a case it completed 27 years ago.

21. The USCIS decision to administratively close the Plaintiff's application to adjust status was done with the specific intent to damage the Plaintiff and his family both emotionally and financially. The USCIS decision is without legal authority and is a complete departure from practice before the agency which has existed for many years.  The issue of whether a parolee is an "arriving alien" has never been disputed by the USCIS until recently. This abrupt, unannounced change in USCIS policy is based on legally inaccurate reasoning in complete disregard for the plain language of the statute, and is arbitrary and capricious.  Moreover, the legally flawed change in USCIS policy is yet another policy change by the current administration made without legal authority and with the specific and deliberate intent to damage immigrants and eviscerate the current immigration system in this country without an act of Congress.

22. As a direct result of the decision by the Defendant, USCIS, to administratively close the Plaintiff's application to adjust status for lack of jurisdiction, the Plaintiff has been financially and emotionally damaged. Because he is an "arriving alien" and does not fall within the specific exception to EOIR jurisdiction over adjustment applications filed by "arriving aliens" in 8 CFR § 1245.2(a)(2), the Plaintiff cannot adjust his status before the U.S. Immigration Court. Therefore, the decision by the USCIS has left the Plaintiff without any possible way to adjust his status which has caused the Plaintiff and his family irreparable harm.

## COUNT ONE

### Violation of the Administrative Procedure Act 5 U.S.C. § 701, et seq.

23. The Plaintiff repeats and re-alleges the allegations in paragraphs 1-22 above and incorporates them herein by reference.

24. The Defendants improper closure of the Plaintiff's application to adjust status is an agency action and is reviewable under the Administrative Procedure Act.

25. A reviewing court shall "hold unlawful and set aside agency action . . . found to be— arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §

706(2)(A). The Defendant, USCIS erroneously closed the Plaintiff's application to adjust status based on a legally inaccurate determination that he is not an "arriving alien" and that it does not have jurisdiction over his application to adjust status.

26. The Defendant, USCIS failed to properly consider and interpret all evidence, misread the INA and the associated regulations and created an interpretation of the law entirely inconsistent with applicable statutes, regulations, case law, and previous agency interpretation of the relevant statutes and regulations. Moreover, the decision by the USCIS breaks with policy and procedure followed by the USCIS subsequent to May, 2006, when 8 CFR § 1245.2 was enacted.  In so doing, the Defendant violated its duty to properly adjudicate the Plaintiff's application to adjust status.

27. The Defendant, USCIS's, decision to administratively close the Plaintiff's application to adjust status is arbitrary and capricious. Under 5 U.S.C. §§ 702 and 704, the Plaintiff has suffered a "legal wrong" and has been "adversely affected or aggrieved" by agency action for which there is no adequate remedy at law.

28. The damage to the Plaintiff is irreparable. This lawsuit presents the only viable solution to the Plaintiff's problem. The Plaintiff seeks preliminary injunctive relief to prevent further action by the Defendants on this case until such time as the court can rule on the merits of the Plaintiff's claim.

29. As a direct result of the Defendant's, USCIS, decision the Plaintiff and his family have suffered severe emotional and financial harm. To the extent relief as requested in this Complaint is not granted the harm to the Plaintiff is irreparable. The Plaintiff is entitled to a declaratory judgment ordering the Defendant, USCIS, to accept jurisdiction over his application to adjust status, reopen the case, and to adjudicate the application. The Plaintiff requires this approval immediately to ensure that he remains in the United States with his family.

30. The Defendants, in violation of the Administrative Procedures Act, 5 U.S.C. § 701 et seq.,

have unlawfully and unreasonably closed the Plaintiff's application to adjust status, leaving him no recourse to obtain lawful permanent residence. The Defendants have failed to properly carry out the adjudicative functions delegated to them by law with regard to the Plaintiff's case. The Plaintiff is entitled to have the USCIS adjudicate his application to adjust status and now seeks a Court order requiring the Defendants, USCIS and Michael McCleary, to accept jurisdiction of the application and adjudicate it. The Plaintiff also requests a declaratory judgment confirming that his application was improperly closed and further seeks preliminary injunctive relief to prevent the Defendants from taking any adverse action on this case inconsistent with the approval of the Plaintiff's application to adjust status.

## **PRAYERS FOR RELIEF**

WHEREFORE the Plaintiff respectfully prays that this honorable Court enter an order:

(a)  accepting jurisdiction over this matter;

(b)  temporarily restraining and enjoining the Defendants from taking any action against the Plaintiff inconsistent with reopening his application to adjust status and accepting jurisdiction over the application;

(c)  declaring that the Defendants decision to administratively close the Plaintiff's application to adjust status was arbitrary, capricious, and unlawful and ordering the Defendants to accept jurisdiction over his application and adjudicate the application in accordance with the Immigration and Nationality Act;

(d)  requiring Defendants to reopen the Plaintiff's application to adjust status and to provide the Plaintiff with evidence that his application is pending with the Defendants and ordering the Defendants to adjudicate the application immediately upon entry of a final order in this case against all Defendants;

(e)  award the Plaintiff all costs and reasonable attorney's fees associated with this matter; and

(f)  granting such other relief at law and in equity as justice may require.

**Respectfully submitted,**
**Osman Alexander Castro**
**By his attorney,**


**/s/ Carlos E. Estrada**
**Carlos E. Estrada, Esq.**
**(BBO #630285)**
**480 William F. McClellan Hwy.**
**Suite 203C**
**East Boston, MA 02128**
**(617) 357-0400**
**carlos@attorneyestrada.com**